**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|   |   |
|---|---|
| DONTE JACKSON, | ) |
| Plaintiff, | ) |
|  | ) Civil Action No. 25-cv-00087-LKG |
| v. | ) |
|  | ) Dated: July 30, 2025 |
| VELOCITY INVESTMENTS, LLC, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

I.  **INTRODUCTION**

In this putative class action matter, the Plaintiff, Donte Jackson, challenges the debt collection practices of the Defendants, Velocity Investments, LLC ("Velocity") and Protas, Spivok & Collins, LLC ("PSC"), pursuant to the Federal Debt Collection Practices Act (the "FDPCA"), 15 U.S.C. § 1692a, *et seq.*, the Maryland Consumer Debt Collection Act (the "MCDCA"), Md. Code Ann., Com. L. § 14-201, *et seq.*, and the Maryland Consumer Protection Act (the "MCPA"), Md. Code Ann., Com. L. § 13-101, *et seq*. *See generally* ECF No. 2. The Defendants have moved to dismiss the complaint for improper venue due to an arbitration agreement, or, alternatively, to compel arbitration and stay civil proceedings, pursuant to Fed. R. Civ. P. 12(b)(3) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. ECF Nos. 14 and 19. The Defendants' motions are fully briefed. ECF Nos. 14, 14-1, 19, 19-1, 20, 23 and 26. No hearing is necessary to resolve the motions. L.R. 105.6 (D. Md. 2021). For the reasons that follow, the Court (1) **DENIES** Defendant PSC's motion to dismiss for improper venue due to arbitration agreement, or, in the alternative, motion to compel arbitration and stay of civil proceedings (ECF No. 14) and (2) **DENIES** Defendant Velocity's motion to dismiss for improper venue due to arbitration agreement, or, in the alternative, motion to compel arbitration and stay of civil proceedings (ECF No. 19).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

In this putative class action matter, the Plaintiff challenges the debt collection practices of Defendants Velocity and PSC, pursuant to the FDPCA, the MCDCA and the MCPA. *See generally* ECF No. 2. Specifically, the Plaintiff alleges that Defendant Velocity, through its attorneys, Defendant PSC, has filed scores of consumer debt collection lawsuits against him and other consumers that were barred by the Maryland statute of limitations. *Id.* at ¶ 2.

The Plaintiff also alleges that the Defendants have obtained payments from, and judgments against, consumers who they targeted through this alleged practice. *Id.* at ¶ 3.

In the complaint, the Plaintiff asserts the following claims against the Defendants: (1) violation of the FDCPA, individually and for the putative class, against all Defendants (Count I); (2) violation of the MCDCA, individually and for the putative class, against all Defendants (Count II); (3) violation of the MCPA, individually and for the putative class, against Defendant Velocity (Count III). *Id.* at ¶¶ 51-82. As relief, the Plaintiff seeks, among other things, to recover monetary damages and attorneys' fees from the Defendants. *Id.* at Prayer for Relief.

<u>The Parties</u>

Plaintiff Donte Jackson is a resident of Maryland. *Id.* at ¶ 4.

Defendant Velocity is a New Jersey limited liability company, with its principal office located in Wall, New Jersey. *Id.* at ¶ 5. Defendant Velocity is a licensed debt collector. *Id.* at ¶ 7.

Defendant PSC is a Maryland limited liability company, with its principal place of business located in Montgomery County, Maryland. *Id.* at ¶ 6. Defendant PSC is a licensed debt collector and a law firm that represents Defendant Velocity. *Id.* at ¶ 8.

<u>The State Court Case</u>

On November 28, 2023, Defendant Velocity brought a debt collection action against the Plaintiff in the District Court for Charles County, Maryland, seeking to recover the balance of a debt owed under a promissory note (the "State Court Case"). *Id.* at ¶¶ 11-12. Phillip J. Collins,

---

[1] The facts recited in this memorandum opinion are taken from the complaint, the Defendants' motions and the memoranda in support thereof, and the exhibits attached thereto. ECF Nos. 2, 14, 14-1, 14-3 and 19-1.

2

who is an attorney with Defendant PSC, signed the complaint ("the State Complaint") in his capacity as counsel for Defendant Velocity. *Id.* at ¶ 13.

The State Complaint alleges that the Plaintiff owed a debt under a promissory note that Defendant Velocity had purchased from Prosper Funding, LLC, on October 15, 2019. *Id.* at ¶¶ 18-19. The State Complaint also alleges that the date of the last payment made on the promissory note was April 25, 2019. *Id*. at ¶ 18.

The Plaintiff moved to dismiss the State Complaint upon the grounds that Defendant Velocity's claim was time-barred under Maryland's statute of limitations. *Id.* at ¶ 22. The district court denied this motion on February 22, 2024. *Id.* at ¶ 25. The trial set for February 28, 2024, was continued to June 3, 2024. *Id.* at ¶¶ 26-27. But, Defendant Velocity voluntarily dismissed the case with prejudice on May 22, 2024. *Id.* at ¶ 28.

The District Court Case

The Plaintiff alleges that Defendant Velocity "facilitated by PSC, developed and implemented a scheme in which Velocity purchased defaulted consumer loans from Prosper Funding, LLC, then waited more than three years before filing collection actions in the District and Circuit Courts of Maryland relating to those loans. *Id*. at ¶ 34.

With regards to the Plaintiff's FDCPA claim, the Plaintiff alleges that the Defendants violated the FDCPA by bringing their debt collection actions beyond the statute of limitations and by: (1) falsely representing the character and legal status of the alleged debt; (2) taking or threatening to take action that could not be legally taken; (3) using a false representation or deceptive means to collect a debt; and (4) using unfair or unconscionable means to collect a debt. *Id*. at ¶¶ 55-56. With regards to the Plaintiff's MCDCA claim, the Plaintiff also alleges that the Defendants violated the MCDCA, by "claiming, attempting, or threatening to enforce a right with knowledge or reckless disregard that the right did not exist, particularly the right to sue and to pursue remedies available only through litigation. *Id*. at ¶ 62. Lastly, with regards to the Plaintiff's MCPA claim, the Plaintiff alleges that the Defendants violated the MCPA by engaging in the aforementioned violations of the MCDCA. *Id*. at ¶ 80. As relief, the Plaintiff seeks, among other things, to recover monetary damages and attorneys' fees from the Defendants. *Id.* at Prayer for Relief.

The Arbitration Agreement

Lastly and relevant to this pending motion, the Defendants maintain in this action that the parties have entered into a valid arbitration agreement (the "Arbitration Agreement") which governs this dispute. *See generally* ECF Nos. 14-1 and 19-1. In this regard, paragraph 18 of the promissory note at issue in this case contains an arbitration provision which provides as follows:

> **18. Arbitration. RESOLUTION OF DISPUTES: I HAVE READ THIS PROVISION CAREFULLY, AND UNDERSTAND THAT IT LIMITS MY RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND ME. I UNDERSTAND THAT I HAVE THE RIGHT TO REJECT THIS PROVISION, AS PROVIDED IN PARAGRAPH (i) BELOW.**
>
> (a) In this Resolution of Disputes provision:
>
> (i) "I", "me" and "my" mean the promisor under this Note, as well as any person claiming through such promisor;
>
> (ii) "You" and "your" mean WebBank, any person servicing this Note for WebBank, any subsequent holders of this Note or any interest in this Note, any person servicing this Note for such subsequent holder of this note, and each of their respective parents, subsidiaries, affiliates, predecessors, successors, and assigns, as well as the officers, directors, and employees of each of them; and
>
> (iii) "Claim" means any dispute, claim, or controversy (whether based on contract, tort, intentional tort, constitution, statute, ordinance, common law, or equity, whether pre-existing, present, or future, and whether seeking monetary, injunctive, declaratory, or any other relief) arising from or relating to this Note or the relationship between you and me (including claims arising prior to or after the date of the Note, and claims that are currently the subject of purported class action litigation in which I am not a member of a certified class), and includes claims that are brought as counterclaims, cross claims, third party claims or otherwise, as well as disputes about the validity or enforceability of this Note or the validity or enforceability of this Section.
>
> (b) Any Claim shall be resolved, upon the election of either you or me, by binding arbitration administered by the American Arbitration Association or JAMS, under the applicable arbitration rules of the administrator in effect at the time a Claim is filed ("Rules"). Any arbitration under this arbitration agreement will take place on an individual basis; class arbitrations and class actions are not permitted. If I file a claim, I may choose the administrator; if you file a claim, you may choose the administrator, but you agree to change to the other permitted administrator

4

at my request (assuming that the other administrator is available). I can obtain the Rules and other information about initiating arbitration by contacting the American Arbitration Association at 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org; or by contacting JAMS at 1920 Main Street, Suite 300, Irvine, CA 92614, (949) 224-1810, www.jamsadr.com. Your address for serving any arbitration demand or claim is WebBank, c/o Prosper Marketplace, Inc., 221 Main Street, Third Floor, San Francisco, CA 94105, Attention: Legal Department.
(c) Claims will be arbitrated by a single, neutral arbitrator, who shall be a retired judge or a lawyer with at least ten years' experience. You agree not to invoke your right to elect arbitration of an individual Claim filed by me in a small claims or similar court (if any), so long as the Claim is pending on an individual basis only in such court.

(d) You will pay all filing and administration fees charged by the administrator and arbitrator fees up to $1,000, and you will consider my request to pay any additional arbitration costs. If an arbitrator issues an award in your favor, I will not be required to reimburse you for any fees you have previously paid to the administrator or for which you are responsible. If I receive an award from the arbitrator, you will reimburse me for any fees paid by me to the administrator or arbitrator. Each party shall bear its own attorney's, expert's and witness fees, which shall not be considered costs of arbitration; however, if a statute gives me the right to recover these fees, or fees paid to the administrator or arbitrator, then these statutory rights will apply in arbitration.

(e) Any in-person arbitration hearing will be held in the city with the federal district court closest to my residence, or in such other location as you and we may mutually agree. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act, 9 U.S.C. § 1-16, and, if requested by either party, provide written reasoned findings of fact and conclusions of law. The arbitrator shall have the power to award any relief authorized under applicable law. Any appropriate court may enter judgment upon the arbitrator's award. The arbitrator's decision will be final and binding except that: (1) any party may exercise any appeal right under the FAA; and (2) any party may appeal any award relating to a claim for more than $100,000 to a three-arbitrator panel appointed by the administrator, which will reconsider de novo any aspect of the appealed award. The panel's decision will be final and binding, except for any appeal right under the FAA. Unless applicable law provides otherwise, the appealing party will pay the appeal's cost, regardless of its outcome. However, you will consider any reasonable written request by me for you to bear the cost.

(f) YOU AND I AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN OUR INDIVIDUAL CAPACITY,

AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. Further, unless both you and I agree otherwise in writing, the arbitrator may not consolidate more than one person's claims. The arbitrator shall have no power to arbitrate any Claims on a class action basis or Claims brought in a purported representative capacity on behalf of the general public, other borrowers, or other persons similarly situated. The validity and effect of this paragraph (f) shall be determined exclusively by a court, and not by the administrator or any arbitrator.

(g) If any portion of this Section 18 is deemed invalid or unenforceable for any reason, it shall not invalidate the remaining portions of this section. However, if paragraph (f) of this Section 18 is deemed invalid or unenforceable in whole or in part, then this entire Section 18 shall be deemed invalid and unenforceable. The terms of this Section 18 will prevail if there is any conflict between the Rules and this section.

(h) **YOU AND I AGREE THAT, BY ENTERING INTO THIS NOTE, THE PARTIES ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION. YOU AND I ACKNOWLEDGE THAT ARBITRATION WILL LIMIT OUR LEGAL RIGHTS, INCLUDING THE RIGHT TO PARTICIPATE IN A CLASS ACTION, THE RIGHT TO A JURY TRIAL, THE RIGHT TOCONDUCT FULL DISCOVERY, AND THE RIGHT TO APPEAL (EXCEPT AS PERMITTED IN PARAGRAPH (e) OR UNDER THE FEDERAL ARBITRATION ACT).**

(i) I understand that I may reject the provisions of this Section 18, in which case neither you nor I will have the right to elect arbitration. Rejection of this Section 18 will not affect the remaining parts of this Note. To reject this Section 18, I must send you written notice of my rejection within 30 days after the date that this Note was made. I must include my name, address, and account number. The notice of rejection must be mailed to WebBank, c/o Prosper Marketplace, Inc., 221 Main Street, San Francisco, CA 94105, Attention: Legal Department. This is the only way that I can reject this Section 18.
(j) You and I acknowledge and agree that the arbitration agreement set forth in this Section 18 is made pursuant to a transaction involving interstate commerce, and thus the Federal Arbitration Act shall govern the interpretation and enforcement of this Section 18. This Section 18 shall survive the termination of this Note and the repayment of any or all amounts borrowed thereunder.

(k) This section shall not apply to covered borrowers as defined in the Military Lending Act. Ex. A at Protas 000009-11 (emphasis original).

>Paragraph 18 of Mr. Jackson's Promissory Note is referred to herein as "the Arbitration Agreement."

ECF No. 14-3 at 10-12.  The borrower registration agreement and limited power of attorney and the terms of use and electronic consent related to the Plaintiff's account also contain a similar arbitration provision.  *Id*. at 23-25 and 45-47.  And so, the Defendants maintain that the Plaintiff has agreed to arbitrate the claims in this dispute.  *See generally* ECF Nos. 14-1 and 19-1.

### B.     Procedural History

The Plaintiff commenced this matter on January 1, 2025.  ECF No. 2.  On February 18, 2025, the Defendant PSC filed a motion to dismiss for improper venue to an arbitration agreement, or in the alternative motioned to compel arbitration and stay of civil proceedings.  ECF No. 14.  On March 18, 2025, the Plaintiff filed a response in opposition to PSC's motion.  ECF No. 17.  On March 28, 2025, the Defendant PSC filed a reply brief.  ECF No. 20.

On March 21, 2025, Defendant Velocity filed a motion to dismiss for improper venue to an arbitration agreement, or, in the alternative filed a response to compel arbitration and stay of civil proceedings.  ECF No. 19.  The Plaintiff then filed a response in opposition to the Defendant Velocity's motion on April 18, 2025.  ECF No. 23.  Defendant Velocity filed a reply brief on April 30, 2025.  ECF No. 26.

## III.    LEGAL STANDARDS

### A.     The Federal Arbitration Act

The "Federal Arbitration Act ("FAA") "requires courts to enforce covered arbitration agreements according to their terms."  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citations omitted).  Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  And so, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'"  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983)).

In this regard, the FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration.  *See* 9 U.S.C. § 4.  Specifically, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.*

The statute also provides that, when presented with such a petition, a court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*  But, if the "making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof." *Id.*

> In addition, Section 3 of the FAA provides that:
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id. § 3.*  And so, this Court has recognized that the FAA provides two parallel methods for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration under Section 3, and an affirmative order to engage in arbitration under Section 4. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015)); *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d. 95, 106 (D. Md. 2021).

The United States Court of Appeals for the Fourth Circuit has also held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (alteration in original) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996)).  And so, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate").  In this regard, "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)).  A party can compel arbitration under the FAA if it can show: (1) the existence

of a dispute between the parties; (2) a written agreement that includes an arbitration provision that purportedly covers the dispute; (3) the relationship of the transaction to interstate or foreign commerce; and (4) the failure, neglect, or refusal to arbitrate the dispute. *Adkins*, 303 F.3d at 496. And so, the Court "engage[s] in a limited review to ensure that the dispute is arbitrable— i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted).[2]

In addition, the Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). And so, "when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67). But, "if the claimant specifically attacks the validity of the delegation clause itself, a court may consider that clause's enforceability." *Id.* (citing *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 455 (4th Cir. 2017)). And so, in assessing the enforceability of an arbitration agreement containing a delegation clause, the Court first must decide whether a plaintiff has lodged a challenge against the delegation clause. *Id.* at 338 (citation omitted). If the Court concludes that a plaintiff "specifically challenged the enforceability of the delegation provision," the Court "then must decide whether the delegation provision is unenforceable 'upon such grounds as exist at law or in equity.'" *Id.* (quoting *Minnieland*, 867 F.3d at 455).

The Fourth Circuit has held that "the FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d

---

[2] The Fourth Circuit has also held that "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (citation omitted) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'").

at 500 (quoting 9 U.S.C. § 3)).[3] The Fourth Circuit has also determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709-10 (4th Cir. 2001). And so, this Court has elected to dismiss a litigation if all claims are subject to arbitration. *See Phears v. LVNV Funding*, *LLC*, No. 20-2843, 2020 WL 7054806, at *2-3 (D. Md. Dec. 2, 2020).

### C. Waiver

Lastly, Maryland courts have held that litigating an arbitrable claim is inconsistent with maintaining a right to arbitrate. *Cain v. Midland Funding, LLC*, 452 Md. 141, 155 (2017) ("[W]e addressed . . . 'whether participation as a party in a judicial proceeding constitutes a waiver of the right to arbitrate issues raised and/or decided in that proceeding.' . . . We concluded that it did ….").

Given this, if a party has litigated an arbitrable claim, the Court "must address whether [the litigation] is related" to the claims now sought to be arbitrated. *Id*. In this regard, "claims are related when '[t]he claim is in actuality part of one basic issue.'" *Id.* at 158 (emphasis removed) (quoting *Charles J. Frank, Inc., v. Associated Jewish Charities of Balt., Inc*., 294 Md. 443, 453 (1982)).

Maryland courts have found that claims are related when the claims "did not just exist at the time of the [c]ollection [a]ctions but were in fact created by the filing of the [c]ollection [a]ctions." *Id.* at 160 (quoting *Nelson v. Liberty Acquisitions Servicing LLC*, 374 P.3d 27, 30 (Utah Ct. App. 2016)). And so, "waiver only extends to other disputes when 'all of the parts of the dispute [are] deemed to be interrelated.'" *Holloman v. Consumer Portfolio Servs., Inc.*, No. CV RDB-23-134, 2023 WL 4027036, at *1 (D. Md. June 15, 2023) (quoting *Charles J. Frank, Inc.*, 294 Md. at 453).

### IV. ANALYSIS

The Defendants have moved to dismiss the complaint for lack of venue, or, alternatively, to compel arbitration and stay this matter, upon the grounds that the parties have entered into a

---

[3] The Fourth Circuit has explained that "application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (citation omitted)

10

valid and enforceable arbitration agreement that requires that the Plaintiff individually arbitrate his claims in this case. ECF Nos. 14-1 and 19-1. Specifically, Defendant PSC argues that the Court should dismiss this matter, and/or compel arbitration, because: (1) the parties' Arbitration Agreement has been previously upheld by this Court; (2) there is a dispute between the parties; (3) there is a written agreement that includes an arbitration provision that purports to cover this dispute; (4) the transaction underlying the Arbitration Agreement relates to interstate commerce; and (5) the Plaintiff has failed and neglected to arbitrate his claims. ECF No. 14-1 at 9-17. For these same reasons, Defendant Velocity seeks to either dismiss the complaint, or to compel arbitration. ECF No. 19-1. And so, the Defendants request that the Court either dismiss the complaint, so that the parties may proceed to arbitration, or stay the case and compel the parties to arbitrate this dispute. ECF No. 14-1 at 17; *see* ECF No. 19-1 at 6.

The Plaintiff counters that he is not obligated to arbitrate the claims in this matter, because: (1) Defendant PSC is not a party to the Arbitration Agreement; (2) Defendant Velocity has not shown a valid agreement to arbitrate; (3) the Defendants have waived any right to arbitrate and (4) Defendant Velocity's motion has been filed contrary to the Court's Case Management Order. ECF No. 17 at 5-11; ECF No. 23 at 2-4. And so, the Plaintiff requests that the Court deny the Defendants' motions. ECF No. 17 at 11-12; ECF No. 23 at 4.

For the reasons that follow, a careful reading of the Arbitration Agreement shows that Defendant PSC is not a party to the Arbitration Agreement and, thus, it cannot enforce that agreement. The plain language of the Arbitration Agreement also shows that Defendant Velocity and the Plaintiff have entered into a valid and enforceable arbitration agreement that covers the claims in this dispute. But the Plaintiff argues with persuasion that Defendant Velocity has waived the right to arbitrate this dispute, because it previously brought the State Court Case against the Plaintiff, which involved related claims. And so, the Court: (1) **DENIES** Defendant PSC's motion to dismiss for improper venue due to arbitration agreement, or, in the alternative, motion to compel arbitration and stay of civil proceedings (ECF No. 14) and (2) **DENIES** Defendant Velocity's motion to dismiss for improper venue due to arbitration agreement, or, in the alternative, motion to compel arbitration and stay of civil proceedings (ECF No. 19).

### A. Defendant PSC Has Not Shown That It Can Enforce The Arbitration Agreement

As an initial matter, Defendant PSC has not shown that it can enforce the Arbitration Agreement in this case, because the plain language of that agreement makes clear that Defendant

11

PSC it is not a party to the agreement. In this regard, it is undisputed that Defendant PSC is the law firm that represented Defendant Velocity in the State Court Case. ECF No. 14 at ¶ 1. It is also undisputed that Defendant PSC is neither a signatory nor a named party to the promissory note that contains the Arbitration Agreement. ECF No. 14-3 at 46. It is similarly undisputed that the named parties to that the Arbitration Agreement are the Plaintiff and Prosper Marketplace, Inc., which is a predecessor-in-interest to Defendant Velocity. *See id.*

Defendant PSC, nonetheless, argues that it is a party to the Arbitration Agreement, because it is servicing the Plaintiff's promissory note on Defendant Velocity's behalf. ECF No. 14-1 at 14. To support this claim, Defendant PSC points to language in Section 22(a)(ii) of the promissory note that provides that: the terms "'you' and 'your' mean WebBank, *anyone servicing the note for WebBank, any subsequent holders, and each of their respective parents, subsidiaries, affiliates, predecessors, successors, and assigns*, as well as the officers, directors, and employees of each of them." ECF No. 14-3 at 11 (emphasis added.); *see also* ECF No 14-1 at 14. But PSC has not shown that it meets this definition, or that it is a servicer of the promissory note. *See* ECF No. 14-1. Given this, Defendant PSC has not shown that it is a party to the Arbitration Agreement. And so, Defendant PSC cannot enforce the Arbitration Agreement and, for this reason, the Court must DENY its motion to dismiss for improper venue due to arbitration agreement, or, in the alternative, motion to compel arbitration and stay of civil proceedings (ECF No. 14.).

### B. Defendant Velocity And The Plaintiff Are Parties To A Valid Arbitration Agreement That Covers The Claims In This Case

A careful reading of the Arbitration Agreement shows, however, that the Plaintiff and Defendant Velocity have entered into a valid and enforceable arbitration agreement that covers the claims in this dispute. The Fourth Circuit has held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation. *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (alteration in original) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996)). And so, the Court next considers whether there is valid and enforceable agreement to arbitrate in this case between Defendant Velocity and the Plaintiff. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."). If so, the Court "has no choice but to grant a motion to compel arbitration

12

where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). And so, the Court "engage[s] in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted).

In this case, the evidence before the Court shows that there is a valid and enforceable written Arbitration Agreement within the Plaintiff's promissory note. *See* ECF No. 14-3 at 10. There is no dispute in this case that Defendant Velocity is the current holder of this promissory note, because Prosper Marketplace, Inc. assigned this promissory note to Defendant Velocity on October 15, 2019. ECF No. 14-3 at 50. The promissory note is also signed by Prosper Marketplace, Inc., in its capacity as the attorney-in-fact for the Plaintiff. ECF No. 14-3 at 15.

In addition, it is undisputed that the Plaintiff received the loan proceeds secured by the promissory note. ECF No. 14-1 at 13. Given these undisputed facts, the Court is satisfied that the Plaintiff and Defendant Velocity entered into a valid and enforceable Arbitration Agreement, which is set forth in Section 22 of the promissory note.

The Plaintiff's arguments to show that this Arbitration Agreement is not valid and enforceable are also not persuasive. The Plaintiff first argues that the Arbitration Agreement is not valid and enforceable, because he did not sign the promissory note. ECF No. 17 at 1. But, the lack of a signature on the promissory note is not a barrier to the enforceability of an arbitration agreement. *Roper v. Oliphant Fin., LLC*, No. CV 23-2112-BAH, 2024 WL 4170921, at *4 (D. Md. Sept. 12, 2024) ("[T]he FAA does not require signatures in order for an arbitration agreement to be enforceable"). There is also no dispute in this case that the Plaintiff received the loan proceeds secured by the promissory note and that he has made payments on the promissory note. ECF No. 14-1 at 13. And so, these facts are sufficient to show that the Plaintiff agreed to the terms of the promissory note, including the Arbitration Agreement.

The Plaintiff's argument that the Arbitration Agreement is not valid and enforceable, because Defendant Velocity does not establish a clear chain of title to the prospects secured by the promissory note is equally unavailing. *See* ECF No. 23 at 3. The Defendants have provided

13

the Court with a certificate of loan sale from WebBank to Prosper Funding LLC, and a bill of sale from Prosper Funding LLC to Defendant Velocity, which verify the chain of title. ECF No. 14-3 at 50 and 52. And so, the Court next considers whether the parties' arbitration agreement covers the claims asserted in this case.

In this regard, the Court is also satisfied that the Arbitration Agreement covers the claims asserted in this dispute. As the Defendants correctly observe, the Arbitration Agreement broadly defines the term "Claims" to cover a broad spectrum of claims that are subject to arbitration. In this regard the Arbitration Agreement defines a "claim" as follows:

> any dispute, claim, or controversy (whether based on contract, tort, intentional tort, constitution, statute, ordinance, common law, or equity, whether pre-existing, present, or future, and whether seeking monetary, injunctive, declaratory, or other relief) arising from or relating to this Agreement or the relationship between us and you (including claims arising prior to or after the date of the Agreement, and claims that are currently the subject of purported class action litigation in which you are not a member of a certified class), and includes claims that are brought as counterclaims, cross claims, third party claims or otherwise, as well as disputes about the validity and enforceability of this Agreement or the validity or enforceability of this Arbitration Section.

ECF No. 14-3 at 46. The Court reads this language to cover any disputes, claims or controversy arising from, or related to, the promissory note. And so, the Court also reads this Arbitration Agreement to cover the claims asserted in this case, which arise from the Defendants' debt collection practices related to the promissory note.

### C. Defendant Velocity Has Waived The Right To Arbitrate

The Court's finding of a valid and enforceable Arbitration Agreement between the Plaintiff and Defendant Velocity does not, however, end the Court's inquiry, because the Plaintiff argues with persuasion that Defendant Velocity has waived the right to compel arbitration by bringing the State Court Case. As the Plaintiff correctly observes, a party can waive a right to arbitrate under Maryland law by taking actions inconsistent with that right. *BarGale Indus., Inc. v. Robert Realty Co.*, 275 Md. 638, 643 (1975). And so, Maryland courts have held that litigating an arbitrable claim is inconsistent with maintaining a right to arbitrate and that doing so can result in the waiver of the right to arbitrate. *Cain v. Midland Funding, LLC*, 155 (2017) ("[W]e addressed . . . 'whether participation as a party in a judicial proceeding

constitutes a waiver of the right to arbitrate issues raised and/or decided in that proceeding.' . . . We concluded that it did . . . .").

To determine whether Defendant Velocity waived its right to arbitrate here, the Court considers whether the claims in the State Court Case are related to the claims asserted in this case. *Id*. Claims are related when the claim is in actuality part of one basic issue. *Cain*, 452 Md. at 158 (quoting *Charles J. Frank, Inc., v. Associated Jewish Charities of Balt., Inc*., 294 at 453 (1982)). And so, Maryland courts have found related claims when the claims "did not just exist at the time of the [c]ollection [a]ctions but were in fact created by the filing of the [c]ollection [a]ctions." *Cain*, 452 Md. at 160 (quoting *Nelson v. Liberty Acquisitions Servicing LLC*, 374 P.3d at 30 (Utah Ct. App. 2016)).

Here, a careful reading of the complaint and the facts about the State Court Case show that the claims in the two cases are related, because the claims in this case were created by the filing of the State Court Case. Notably, the complaint makes clear that each of the claims asserted in this case relate to Defendant Velocity's alleged decision to bring a state debt collection lawsuit against the Plaintiff, after the statute of limitations for the Defendant Velocity's debt collection claim had expired. *Id.* at ¶¶ 57, 66 and 82. And so, the claims asserted in this matter are related to the claims the Defendant Velocity asserted in the State Court Case, resulting in a waiver of its right to arbitrate.[4] *See* ECF No. 2 at 16; *Cain*, 452 Md. at 160.

Because Defendant Velocity has waived the right to arbitrate the claim in this case, the Court DENIES Defendant Velocity's motion to dismiss for improper venue due to arbitration agreement, or, in the alternative, motion to compel arbitration and stay of civil proceedings (ECF No. 19).

---

[4] Defendant Velocity argues for the first time in its reply brief that the Arbitration Agreement contains a delegation clause that requires that issues such as waiver be delegated to the arbitrator. ECF No. 20 at 2. The Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). And so, "when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67). But here, the Court does not read the language cited by Defendant Velocity to clearly and unmistakably delegate this threshold issue to the arbitrator.

15

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **DENIES** Defendant PSC's motion to dismiss for improper venue due to arbitration agreement, or, in the alternative, motion to compel arbitration and stay of civil proceedings (ECF No. 14) and

(2) **DENIES** Defendant Velocity's motion to dismiss for improper venue due to arbitration agreement, or, in the alternative, motion to compel arbitration and stay of civil proceedings (ECF No. 19).

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge